Spence v. Dunlap.

REBECCA B. C. SPENCE v. JAMES T. DUNLAP et al.

1. VOLUNTARY CONVEYANCE. Existing debt. Fraud. Burden. The burden is upon the donor, in a voluntary conveyance, to remove the presumption of fraud as to the existing creditor.

2. CHANCERY PLEADING AND PRACTICE. Allegation. Demurrer. Answer. Subsequent creditor. The mere allegation by a subsequent creditor that the conveyance is voluntary, is probably demurrable; and after answer, without objection, it is doubtful whether the validity of the deed is in issue, but if the answer so treat it, the court will determine the question.

3. FRAUD. Evidence. Presumption. If the property conveyed is of a stable character, and the property retained is of uncertain and doubtful value, or if the donor is indebted to an extent that the conveyance will have the effect to hinder and delay his creditors, fraud will be presumed; but if existing debts are provided for in the conveyance, or if they are afterwards paid, or if the intention to pay them is clearly manifested by the amount and character of the property retained, the presumption of fraud will be rebutted.

4. SUBSEQUENT CREDITORS. Equities of. The equity of a subsequent creditor flows from and is limited by the equity of the existing creditor, unless the intent to defraud future creditors affirmatively appears.

5. QUESTION RESERVED. Whether, if fraud as to existing creditors is not rebutted, a subsequent creditor, who became such with a full knowledge of the conveyance, can impeach it.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

M. C. GOODLETT for complainant.

ED. H. EAST for defendants.

McFARLAND, J., delivered the opinion of the court.

The complainant, as a creditor of Jas. T. Dunlap, brings this bill to have satisfaction of her debt by setting aside, as voluntary and fraudulent, several conveyances or settlements, to-wit: A deed by William S. Whiteman for certain property in the city of Nashville to said James T. Dunlap, as trustee for his wife and children, of date the 15th of December, 1863, and also two deeds executed by said Dunlap, the first of date 12th of December, 1868, conveying to his wife lands in Henry county, the other of date 6th of January, 1869, conveying to his son, Jas. T. Dunlap, Jr., another tract of land also in Henry county.

The first mentioned of these three conveyances was prior in time to the creation of the complainant's debt. The two latter were subsequent.

The complainant's debt originated, on the 16th of January, 1869, by the loan to said Dunlap of five thousand dollars, secured by a note at twelve months with interest from date, and also by the execution of a mortgage by said Dunlap, conveying to complainant a tract of land in Henry county. Subsequently, about April, 1871, said Dunlap consented for a decree to be entered in the chancery court at Nashville for the amount of said note with *ten* per cent. interest, and for a foreclosure of the mortgage, and a sale of the land *for cash without the equity of redemption.* The land was sold and purchased by complainant for $1,750, which was credited upon her decree, and this bill filed to have satisfaction of the balance.

The bill charges that complainant was defrauded and misled by said Dunlap both as to the quantity

and value of the land mortgaged, and she was thereby induced to accept it as sufficient security for her debt, when in reality it was not.

The proof shows that the land was estimated in the mortgage deed as containing 379 acres, when in fact it contained some forty acres less, but it clearly appears that the mistake was innocently and not fraudulently made, and furthermore, that in reality the land conveyed was at the time of the mortgage, and at the time it was sold and purchased by complainant, worth the amount of her debt and legal interest, and that the small sum realized was owing to the injudicious sale for cash without the equity of redemption.

While the complainant may stand upon her right to the remainder of her debt thus acquired, the facts stated disprove the allegation of a meditated fraud in procuring the loan upon the security of the mortgaged property.

The conveyances by Dunlap to his wife and son being subsequent to the creation of complainant's debt, it is important to inquire whether they were voluntary as charged, for then it would be incumbent upon the defendants to remove the presumption of fraud, by showing that the grantor was in a condition to make such conveyances, but it is denied that they were either voluntary or fraudulent.

In respect to the deed to the wife, the facts are as follows: Dunlap was indebted to one Branham for the purchase of a house and lot in the city of Nashville. The purchase was made in 1858, for $15,000, on long time, but with interest. The purchase was

made for said Dunlap himself, a lien being retained on the property. About, or shortly before the date of the deed now in question, Dunlap, being anxious to make payments to Branham, proposed to convey to him the land in Henry county subsequently conveyed to Mrs. Dunlap. Branham declined to take the Henry county land, but proposed to take a tract of land owned by Mrs. Dunlap, lying near Nashville, and give credit on his debt against Dunlap for the sum of $7,700. At the instance of her husband, Mrs. Dunlap agreed to convey her land to Branham, to go as a credit on her husband's debt, as above indicated, upon condition that the Henry county land should be conveyed to her. The conveyances were made in pursuance of this agreement. There is no conflict in the proof in regard to it. The land conveyed by Mrs. Dunlap to Branham was undoubtedly her own property. She received no benefit from the conveyance otherwise than in the land received in exchange. The debt to Branham was a just and *bona fide* debt of Jas. T. Dunlap. The land of Mrs. Dunlap conveyed to Branham was of greater value than the land received by her in exchange. Upon these facts there can be no just claim that the conveyance was voluntary. There is no evidence of a fraudulent intent in fact; indeed, it is not charged. The contract was perfectly fair and free from fraud, and the chancellor properly refused to set it aside.

The conveyance to James T. Dunlap, Jr., was in consideration of $3,000, in three annual installments, with interest, as expressed on the face of the deed.

The allegation of the bill is, that James T. Dunlap, Jr., was "a young man, without much means, . had not paid anything on the purchase," and that it was in reality a voluntary settlement by the father upon the son.

The proof shows that Jas. T. Dunlap, Jr., had by inheritance means of his own equal to the amount of his purchase; he was, beside, a young man of good character and credit, and could have obtained credit to the amount of $3,000. Notes were executed for the three thousand dollars, which were transferred by Jas. T. Dunlap, Sr., to parties who held just and *bona fide* debts against him, and Jas. T., Jr., raised money by mortgaging· the land for the payment of part of the debts, and others to whom the notes were transferred filed bills to enforce liens against the land, and are prosecuting these claims, so far as appears, in good faith. Three thousand dollars was at the time the full value of the land.

There is no proof in the record contradicting these facts. We conclude, therefore, that the conveyance was not voluntary as charged, but a sale for full value and in good faith, and the decree of the chancellor denying relief to the complainant in respect to this deed is also correct.

The great stress of the argument, however, in this court has been in reference to the remaining conveyance, and as to which the decree of the chancellor was in favor of the complainant.

The facts in regard to this conveyance are as follows: During the late war the said James T. Dun-

lap was following the fortune of the Confederate cause in the Southern States, his home being in the city of Nashville. About the 15th of December, 1863, having a large amount of Confederate money, he purchased, for $50,000 of said notes, from W. S. Whiteman a half interest in certain property in Nashville, upon which were three brick stores, and took from Whiteman a deed to himself as trustee for his (Dunlap's) wife and children, with an unrestricted power in said trustee to sell the property. Subsequently, and before the creation of the complainant's debt, this deed was registered in Davidson county.

The allegations of the bill in regard to this deed are peculiar. There is no charge or averment made by the complainant in regard to its character. The charges are, that having been informed that said Dunlap had been buying valuable real estate and taking the title to himself as trustee for his wife and children, she caused investigation to be made, and ascertained that Granville C. Torbett, executor of Matthew Barrow, deceased, a creditor of said Dunlap, had filed a bill in which he had made various allegations in regard to said conveyance, which complainant sets forth in her bill, and the substance of which are, that it was in effect a voluntary settlement by Dunlap upon his wife and children, when he was indebted at the time to such an extent as to render the settlement void; that Dunlap had subsequently mortgaged the property to secure a loan from one Turner, and proceeds to set forth various reasons why Turner's mortgage was not valid. It will be observed that com-

plainant does not charge that the conveyance was voluntary or fraudulent, but only sets forth the allegations of Torbett's bill, without adopting them or averring that they were true. It will be further observed, that Torbett's bill, as set forth by complainant, does not aver that the settlement was made with a fraudulent intent in fact, but simply that it was voluntary, and that Dunlap was not in a condition to make it.

If objection had been taken to these allegations by demurrer, they would probably have been held insufficient, and in strictness, even after answer without objection, it is perhaps doubtful whether it ought to be held that the validity of the deed is in issue; but as the answers have so treated the matter, we will so consider it. That the deed was a voluntary settlement is not questioned, but that it was void, even as to the then existing creditors, is denied, and with still more earnestness is it denied that it is void as to the complainant, a subsequent creditor.

The proof shows that General Dunlap had been, up to and at the time of this transaction, a man of wealth, owning sixty or seventy slaves and a large amount of lands and other valuable property. The results of the war had then thrown great doubt upon the value of his slaves, if it had not destroyed their value, and besides, had generally imperiled the fortunes of all men occupying his position. Nevertheless, he was hopeful, confident of his solvency, and placed a large estimate upon the value of his property, and we think it clear that in taking the title from Whiteman to himself as trustee, he had no pur-

pose in fact to defraud either existing or future cred-
itors. He owed debts at the time to the amount of
about $20,000 in round numbers. The two largest
and in fact principal debts, amounting to over $24,000,
was the one to Branham, before referred to, for the
purchase of a house and lot in Nashville, and the
one to Barrow's estate, also referred to, for the pur-
chase of other real estate near the city of Nashville.
For both of these debts liens existed upon the prop-
erty for which the debts were created. The next
largest debt was to his brother, of near $3,000. At
the time said Dunlap's assets, exclusive of slaves,
amounted, at fair estimates, to something over $50,-
000, much the larger part of which was real estate.
Under these circumstances, having $50,000 in Confed-
erate treasury notes, worth at the time eight cents on
the dollar and rapidly depreciating, he purchased the
property in question, and, in view of the perils then
surrounding him, took the title to himself as trustee
for his wife and children.

We do not admit, as argued by his counsel, that
Dunlap's own sanguine views in relation to the value
of his slave property forms the proper criterion upon
which to determine whether he retained ample means
to pay his debts. Nor do we concede the creditor
has the right to settle upon his family his property
of a stable character, and leave to his creditors the
property of uncertain and doubtful character. Further-
more, it will be presumed that a party intends the
probable consequences of his own act, and if a volun-
tary conveyance be made by one indebted at the time

to such an extent as that the conveyance will have the effect to hinder and delay the creditors, it will be presumed that such was the intention. Nevertheless, we are satisfied that there was no fraudulent purpose in fact in this transaction, and, furthermore, that the presumption of fraud arising from the voluntary character of the settlements is rebutted by the facts in this case. Not only does it appear that he retained assets of the character and description mentioned, but by far the larger part of his debts were well secured, and, furthermore, that they have since been paid. The debts to Branham and Barrow's estate and to his brother have certainly been paid. In his answer and testimony, Dunlap conceded that he owed other debts, amounting to some $1,200, without specifying to whom owing. It does not affirmatively appear whether or not these debts have been paid; at any rate, no one is complaining.

Without undertaking to enter into a full discussion of the question as to when and upon what principle a subsequent creditor may set aside a previous voluntary conveyance for the satisfaction of his debt, we hold that, even where it is shown that there were existing debts, yet, if the presumption of fraud as to such existing debts, arising from the voluntary character of the deed, be rebutted by the facts and circumstances showing the *bona fides* of the transactions, then the deed cannot be impeached, as where the conveyance itself provides for the existing debts, or where not in fact provided for, if from the property retained and other facts it appears to have been the purpose

30—VOL. 6.

that they should be paid, and especially when in fact they are subsequently paid. The mere fact of the existence of debts is not conclusive as to the fraudulent character of a voluntary deed even as to such debts, and as the subsequent creditor must work out his right through the existing creditor, it is clear that the former cannot have the conveyance declared void when the latter could not have done so. We understand this to be the doctrine of the cases of *Nicholas* v. *Ward,* 1 Head, 324; *Hester* v. *Wilkinson,* 6 Hum., 215; *Vance* v. *Smith,* 2 Heis., 343. This must be the inevitable result. For, as said by Judge Nelson in the case last cited, "it is now the firmly established principle of equity jurisprudence, that a voluntary conveyance made by a person not indebted at the time, cannot be impeached by subsequent creditors merely upon the ground that it is voluntary."

If this be true, then if the grantor be indebted at the time, and yet the presumption of a fraudulent intent as to the existing creditors is rebutted, the same result must follow—that is, that the subsequent creditor can have no relief.

When there is evidence of a fraudulent intent in fact as to existing creditors, or the presumption arising from a voluntary conveyance is not rebutted, or where there is evidence of intent to defraud future creditors, the case would be different.

This renders it unnecessary to determine another question ably argued—that is, assuming that the presumption of fraud as to existing creditors is not rebutted, yet if it appear that the debt of the subse-

quent creditor was created with full knowledge of the existing voluntary conveyance, either by registration or actual knowledge, and especially if he advance his money upon the faith of the specific lien or mortgage on other property, can he then have relief against the voluntary conveyance?

There is strong authority, supported by apparently sound reasons, for repelling the complainant on this ground; but regarding the reason just stated as conclusive, we need not go further.

The decree of the chancellor will be reversed, and the bill dismissed with costs.